UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROBERT GAULIN, Plaintiff, | ) | |
| v. | ) | DOCKET NO: 07-0165 ML |
| PENN-AMERICA INSURANCE GROUP, INC., Defendant. | ) | |

**PENN-AMERICA INSURANCE GROUP, INC. (mis-identified)
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Now comes the defendant Penn-America Insurance Group, Inc., in the above-entitled declaratory judgment action and submits this Memorandum of Law in support of its motion for summary judgment. This matter involves an underlying lead poisoning claim, and the subject Penn-America policy contains a lead contamination exclusion.

## I. Facts.

### A. Underlying Complaint: injury due to lead poisoning.

In the underlying complaint[1], the Beausoleils allege that they were residents and tenants at Robert Gaulin's property located at 1598 Lonsdale Avenue, Lincoln, RI. Exhibit 1 (Beausoleil Complaint, paras. 2 & 4). The Beausoleils allege that at the premises "there existed dangerous, hazardous, and illegal levels of lead-based paint, plaster, and materials inside the dwelling and generally within and about the dwelling." Exhibit 1 (para. 6). The Beausoleils further allege that on or about August 30, 2001, minor Jeremy Beausoleil was diagnosed with lead poisoning, and that in October 2001 the Rhode Island Department of Health confirmed the existence of lead paint exposure

[1] The underlying lead poisoning complaint is titled "Lee Ann Beausoleil and Ronny Beausoleil, Individually and as Parents, Natural Guardians, and Next-Friend to their minor child, Jeremy Beausoleil, vs. Robert J. Gaulin," Providence County Superior Court, CA # 06-4333.

hazards throughout the dwelling. Exhibit 1 (paras. 7 & 8). As a result of that lead exposure and minor Jeremy Beausoleil's alleged lead poisoning, the Beausoleils filed a three count complaint (negligence; negligent misrepresentation and omissions; and punitive damages) in Providence County Superior Court. Exhibit 1.

**B. Denial of coverage letters.**

In a letter dated January 21, 2005, the Beausoleils' attorney informed Gaulin's insurance agent, in pertinent part, that:

> Our clients, Mr. & Mrs. Beausoleil moved into the property at 1598 Lonsdale Avenue, Lincoln, RI, in approximately March 2001.
> On August 30, 2001, their son, Jeremy Beausoleil (DOB 8/31/99) was lead poisoned with a blood lead level of 37 ug/dl.

Exhibit 2, (1-21-05 letter alleging lead poisoning injury). Penn-America responded to that notice one month later, with a February 23, 2005, letter to Gaulin, that stated, in pertinent part:

> Penn-America Insurance Company has been presented with a claim made against you alleging that Jeremy Beausoleil has been exposed to lead poisoning while a tenant at your property, located at 1598 Lonsdale Avenue, Lincoln, RI, since he moved into the property in March 2001. . . . The purpose of this letter is to inform you that there will be no coverage under your commercial general liability policies for defense and/or indemnification of this matter.

Exhibit 3, (2-23-05 letter to Gaulins denying coverage). That letter further explained that the basis for there being no coverage for this claim was the "Lead Contamination Exclusion" contained in Gaulin's policy.

Two years later, Gaulin's attorney sent a fax to Penn-America, informing them of the underlying lead poisoning complaint that the Beausoleils had now filed. Exhibit 4, (1-23-07 fax to Penn-America). Penn-America responded to that fax with a letter to the Gaulins dated February 26, 2007, and again informed the Gaulins that there was no coverage for this lead poisoning claim.

That coverage denial letter stated, in pertinent part:

> As a follow-up to our coverage disclaimer letter of February 23, 2005, Penn-America Insurance Company is recently in receipt of a Complaint entitled "Beausoleil vs. Gaulin" filed in Rhode Island Superior Court, CA. No. PSC 06-4333. This suit seeks damages arising from alleged lead paint poisoning suffered by the minor Plaintiff.
> The purpose of this letter is to advise you that there is no coverage for this loss under your commercial general liability policy.

Exhibit 5, (2-26-07 letter to Gaulins denying coverage). In denying coverage, Penn-America again referenced the "Lead Contamination Exclusion" contained in Gaulin's policy.

**C. The insurance policy and the Lead Contamination Exclusion.**

Penn-America issued a commercial lines policy, number PAC 6204469, to Muriel Gaulin and Robert J. Gaulin, with effective dates of August 4, 2001, through August 4, 2002.[2] Exhibit 6 (insurance policy). This commercial lines policy PAC 6204469 provides, in pertinent part, that:

> SECTION I - COVERAGES
>
> COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

Amendment of Insuring Agreement, Known Injury or Damage (CG 00570999).[3]

[2] Policy number PAC 6204469 is the insurance policy referenced in Gaulin's complaint. (Complaint, para. 6). The Gaulins commercial general liability policy in effect immediately preceding this policy is PAC 6164376, with effective dates of 8/4/2000 to 8/4/2001. This prior policy covers the date the Beausoleils allege they moved to the property, which is March 30, 2001. (Exhibit 2). This prior Penn-America policy PAC 6164376 contains the same commercial general liability coverage form, lead contamination exclusion, and punitive damages exclusion as the Penn-America policy discussed above. (Exhibit 9)

[3] This cited language is identical to the commercial general liability coverage form's (CG 000010798) paragraph 1a.

The policy contains the endorsement "Lead Contamination Exclusion" (form S2033 (02/94)) which excludes coverage for lead exposure. The lead exclusion explicitly excludes coverage for bodily injury or any other damages because of liability, alleged liability, or occurrence resulting from, caused by, arising out of or in any way connected with the existence of lead or exposure to lead, and states, in pertinent part:

> [T]his policy will not provide coverage, meaning indemnification or defense costs, arising out of
> "Bodily Injury", "Property Damage", . . . or any other damages because of liability, alleged liability, or occurrence resulting from, caused by, arising out of or in any way connected with
> The existence of lead, . . . or exposure to lead in any form which is or has at any time been present in, on, or near the insured's premises . . .
>
> 1) Whether or not caused by, at the instigation of, or with direct or indirect involvement of the insured . . .

Exhibit 7, (Lead Contamination Exclusion).

The policy also contains a "Punitive Damages Exclusion" (form S2002 (02/95)), that states "the Company shall not be liable for any damages awarded against an insured as punitive or exemplary damages." Exhibit 8, (Punitive Damages Exclusion).

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a summary judgment motion, and states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c).

## III. Argument

### A. The policy language is not ambiguous, and should be construed as written.

The terms of an insurance policy are interpreted according to the same rules of construction governing contracts. Town of Cumberland v. Rhode Island Interlocal Risk Management Trust, 860 A.2d 1210, 1215 (R.I. 2004); Pawtucket Mutual Insurance Co. v. Gay, 786 A.2d 383, 386 (R.I. 2001). The court looks at the four corners of a policy, viewing it "in its entirety, affording its terms their 'plain, ordinary and usual meaning.'" Casco Indemnity Co. v. Gonsalves, 839 A.2d 546, 548 (R.I. 2004) (quoting American Commerce Insurance Co. v. Porto, 811 A.2d 1185, 1192 (R.I. 2002)). The court should follow the literal policy language unless it deems the policy to be ambiguous. Pawtucket Mutual Insurance Co., 786 A.2d at 386 (citing Sjogren v. Metropolitan Property & Casualty Insurance Co., 703 A.2d 608, 610 (R.I. 1997)).

> The language used in the policy must be given its plain, ordinary, and usual meaning. When the terms are found to be clear and unambiguous, the task of judicial construction is at an end. The contract terms must then be applied as written and the parties are bound by them.

Malo v. Aetna Casualty and Sur. Co., 459 A.2d 954, 956 (R.I. 1983) (citations omitted). A policy "is not to be described as ambiguous because a word is viewed in isolation or a phrase is taken out of context." McGowan v. Connecticut Gen. Life Ins. Co., 289 A.2d 428, 429 (R.I. 1972).

Here, the Lead Contamination Exclusion (S2033 (2/94)) is an explicit and clear policy exclusion pertaining to "the existence of lead, the removal of lead, . . . or exposure to lead in any form which is or has at any time been present in, on, or near: the insured's premises; . . .". From its title (Lead Contamination Exclusion, in all capital letters), to the endorsements actual terms, this lead contamination exclusion's terms are clear and unambiguous. As such, the language of the exclusion should be given its "plain, ordinary, and usual meaning," and claims arising out of or in any way connected with lead should be excluded from coverage.

**B. Penn-America has no duty to defend or indemnify, as coverage is excluded under the Lead Contamination Exclusion.**

Under Rhode Island law, an insurer's duty to defend an insured is determined by the application of the "pleadings test." Peerless Ins. Co. v. Viegas, 667 A.2d 785, 787 (R.I. 1995). The court must look at the allegations contained within the complaint against the insured. "When a complaint contains a statement of facts which bring the case within or potentially within the risk coverage of the policy, the insurer has an unequivocal duty to defend." Employers' Fire Ins. Co. v. Beals, 240 A.2d 397, 403 (R.I. 1968). The court must resolve any uncertainty as to the adequacy of the pleadings in this respect in favor of the insured. Id. The duty to indemnify, however, is more narrow in scope. Id. An insurer's obligation to indemnify is contingent upon whether the injured party will ultimately prevail against the insured. Id. Consequently, the court must look to the insured's actual basis for liability to the injured party. Id.

Here, the Beausoleil complaint clearly arises out of lead contamination. When the Beausoleils first put Gaulin's insurance agent on notice of this potential claim, they wrote that the Beausoleil's lived at the Gaulin's property at 1598 Lonsdale Avenue, Lincoln, RI; that Jeremy Beausoleil was lead poisoned; that an inspection of the premises found damaged and chipped lead paint; and that the Beausoleil's "noticed a change in the behavior of their son since his lead poisoning." The Beausoleils later filed suit against Gaulin, making out a lead poisoning claim, and alleging in their complaint that:

- while plaintiffs and their minor child were tenants at the Gaulins premises, there were "dangerous, hazardous, and illegal levels of lead-based paint, plaster, and materials inside the dwelling," and that the lead levels were in excess of acceptable environmental lead levels; (para. 5);

- the lead hazards were violations of various statutes, were not corrected in a timely fashion, and continued to pose a health hazard to Jeremy Beausoleil (para. 6);

- on August 30, 2001, Jeremy Beausoleil was diagnosed with lead poisoning (para. 7);

- on October 2, 2001, the Department of Health confirmed the existence of lead paint exposure hazards throughout the dwelling (para. 8);

- the defendant had duties to not let another occupy a dwelling that contains lead-based substances, and contains lead levels in excess of acceptable environmental lead levels (para. 11);

- the defendant had duties to provide literature to the plaintiffs explaining hazards of lead paint (para. 14);

- defendant breached its duties by, amongst other items, allowing Jeremy Beausoleil to occupy a dwelling that contained lead-based substances, excessive lead levels, and failed to provide literature explaining hazards of lead paint (para. 15);

- as a result of defendants' breaches, minor Jeremy Beausoleil was lead poisoned (para. 17);

- the defendant misrepresented that the property was free from lead paint, and/or omitted stating that the property was not free from lead paint (para. 20); and,

- as a result of defendants negligent misrepresentation and/or omissions, minor Jeremy Beausoleil was lead poisoned (para. 23).

Exhibit 1 ( see generally Beausoleils complaint).

The Beausoleils complaint clearly is one for lead poisoning, arising out of alleged exposure to lead paint or other lead-based materials at the Gaulin's premises that the Beausoleils rented. A straightforward reading of the Beausoleils' complaint shows that all claimed damages and events arise out of, or in connection to, the alleged existence of lead at the premises, and minor Jeremy Beausoleil's alleged exposure to that lead. This is exactly what the Lead Contamination Exclusion excludes from coverage.

When the Beausoleils complaint is compared with the clear, unambiguous Lead Contamination Exclusion language, there can be no coverage. The exclusion is broadly written, and states that the policy will not provide coverage for any injury or damages "caused by, arising out of, or in any way connected with" the existence of lead or exposure to lead in any form that is in, on, or near the insured's premises. On its face, the Beausoleils complaint seeks damages caused by, arising out of, and connected to lead exposure. As such, the Lead Contamination Exclusion excludes coverage for the Beausoleils claims.

**C. <u>Penn-America has no duty to defend or indemnify the Gaulins as to the punitive damages claim, as coverage is excluded under the Punitive Damages Exclusion.</u>**

The policy contains a "Punitive Damages Exclusion," which states that:

> It is part of the conditions of this policy that the Company shall not be liable for any damages awarded against an insured as punitive or exemplary damages.

<u>Exhibit 8</u>. The policy further states under "Section I – Coverages" that "[W]e will have no duty to defend the insured against any "suit" seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (<u>Exhibit 7</u>). This insurance does not apply to punitive damages, and therefore there is no duty to defend that claim.[4]

## IV. Conclusion

For the reasons stated above and those that will be raised at the oral argument of this motion, the Penn-America Commercial Lines Policy that it issued to the Gaulins does not provide coverage for the Beausoleils claims in the underlying suit. As such, Penn-America requests that this court to grant its summary judgment motion.

PENN-AMERICA INSURANCE
GROUP, INC. (*mis-identified),*
By its attorneys,
MORRISON MAHONEY LLP,

/ s/ Paul Sullivan

Paul V. Sullivan (#5712)
121 South Main Street, Suite 600
Providence, RI 02903
Tel: (401) 331-4660; Fax: (401) 351-4420
pvsullivan@morrisonmahoney.com

[4] We also note that the punitive damages claim would be excluded for coverage under the exclusion for "Expected or Intended Injury"; for public policy reasons; and for the reasons stated previously, by the Lead Contamination Exclusion. The Rhode Island Supreme Court has emphasized that punitive damages are not awarded as compensation for the plaintiff but in order to punish the offender and to deter future misconduct. <u>Allen v. Simmons</u>, 533 A.2d 541, 543 (R.I. 1987). The court has also emphasized that one seeking punitive damages is required to produce "'evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality, that for the good of society and warning to the individual, ought to be punished.'" <u>Id.</u>.; <u>Morin v. Aetna Casualty and Surety Co</u>., 478 A.2d 964, 967 (R.I. 1984).

**CERTIFICATE OF SERVICE**

I hereby certify that an exact copy of the within document was electronically mailed to the Electronic Case Filing system of the Unite States District Court for its distribution to all counsel of record, this of 21st day of October, 2007.

/ s / Paul Sullivan
______________________________
Paul V. Sullivan