UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ROBERT GAULIN,<br>Plaintiff,<br><br>VS.<br><br>PENN-AMERICA INSURANCE GROUP, INC.,<br>Defendant | CA NO.: 07-0165 ML<br><br>PLAINTIFF ROBERT GAULIN'S MEMORANDUM IN SUPPORT OF HIS OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND HIS CROSS-MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND |

PLAINTIFF ROBERT GAULIN'S MEMORANDUM IN SUPPORT OF HIS OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND HIS CROSS-MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND

NOW COMES the plaintiff, Robert Gaulin, who, by and through his attorney files this MEMORANDUM N SUPPORT OF HIS OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND HIS CROSS-MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND, as follows:

I. ADDITIONAL FACTS

A. No letter and No Agent and Delay in Response.

The plaintiff, in his opposition to the defendant's Statement of Undisputed Fact, asserts that (1) no February 25, 2007 letter, by defendant and which defendant states it informed plaintiff and his deceased mother "that there was no coverage for defense and/or indemnification for the claims of Beausoleils" was received by him (copy is attached as Exhibit 4 of Defendant's Statement of Undisputed Fact) and (2) that the prior letter of January 21, 2005, authored by Beausoleils' attorney claims of Beausoleils" was

sent to his “insurance agent.” (copy is attached as Exhibit 2 of Defendant’s Statement of Undisputed Fact), because it is the plaintiff’s position that the person to whom such January 21, 2005 letter was sent was the insurance agent of the defendant.

The underlying action by the Beausoleils against the plaintiff was filed in August of 2005 and by fax letter, dated January 23, 2007 to defendant (copy whereof is attached as Exhibit 4 of Defendant’s Statement of Undisputed Fact), plaintiff’s attorney forwarded copy of the complaint and summons for said action, stating that defendant’s “agent was appraised of the Complaint on September 11, 2006 . . .(and) has yet to be answered . . . .”

Since 1995, defendant had in effect an asbestos policy exclusion which, contrary to the claimed lead paint exclusion, is quite clear an unambiguous, and defendant has not sought, during the material times herein, to change or conform its claimed lead paint policy exclusion to be similar and as clear as that of the defendant’s asbestos policy exclusion, both of which are exhibits to the Defendant’s Statement of Undisputed Fact (and shown hereinafter).

The plaintiff, when applied for and purchased the subject policy, understood that the insurance agent, Coe-Hosford, was the agent and representative of the defendant. (See Plaintiff’s Statement of Undisputed Fact.)

Despite the fact that defendant received a copy of the Complant and Summons for the underlying action on or about September of 2006, it took no action whatsoever to advise the plaintiff of no coverage and that it would make no answer or defense or sent any notice in this regard until some five months later. ( See Plaintiff’s Statement of Undisputed Fact.

B. The Superior Court Complaint Against Plaintiff by Beausoleils.

A review of the predicate complaint filed by the Lee Ann Beausoleil and Ronny Beausoleil individually and as Parents and Natural Guardians, and Next-of-friend to their minor child, Jeremy Beausoleil (hereinafter "Beausoleils") against this plaintiff, Robert Gaulin, in the Providence Superior Court, P.C.A. No. 06-4333 sets out three causes of actions, to wit:

Count I—Negligence,

Count –Negligent Misrepresentation and Omissions,

Count III—Punitive Damages

Count No. I asserts that this plaintiff, the named defendant therein, negligently failed "to inform (the Beausoleils) of any violations . . . of health and safety codes, and: comply with the housing codes . . . and to make all repairs . . . to keep the dwelling in a safe and habitable condition. (See paragraph 12 sections a., b. and c.) And, that this plaintiff negligently failed to "inspect the premises to insure that it was free from defect, was habitable, and was safe for human habitation and/ inform the (Beasuoleils) of the hazardous condition of the dwelling. (See paragraph 12 sections a., b. and c.)

Count No. 1 then goes on in paragraph 15 to list some 11 acts of negligence, mainly dealing with negligent failure to allow occupancy, failure to inspect, failure to inform, failure to make repairs, failure to inspect etc.

Count II in addition to re-alleging Count I, introduces a claim of this plaintiff's failure to exercise reasonable and due care in making representations as to the safety, habitability and/or condition of the premises.

Count III seeks punitive damages, some of which are claimed to arise out of inaction concerning the compliance with re-alleged housing codes, housing repairs and failure to inspect.

C. Policy Exclusion Provision?:

The defendant's claimed exclusionary provision in the subject policy reads:

> * * * it is hereby understood and agreed that this policy will not provide coverage . . . arising out of:
>
> "Bodily Injury" . . . caused by . . . with:
>
> The existence of lead, removal of lead . . . in connection with such existence, removal or testing:
>
> 1) Whether or not caused by, at the instigation of . . . involvement of the insured, the insured's employees or other persons on the insured's premises or work site; or
>
> 2) Whether or not caused by or arising out of the insured's failure to properly supervise or keep the work site in a safe condition.

II <u>ARGUMENT</u>

The crux of this case is whether vel non there is a duty to defend the predicate case filed in the Superior Court for Providence County and State of Rhode Island.

Under the *Erie R. R. Co. v. Tompkins* doctrine, 304 U.S. 64, 78 (1938), this being a state action and diversity case, Rhode Island law is applicable. Under established Rhode Island law, which follows the general rule on the issue of insurance coverage, the court looks at the four corners of the subject complaint and compares it with the policy to first determine if there is a duty to defend. *See Progressive Casualty Insurance Co. v. Narragansett Auto Sales*, 764 A.2d 722, 724 (R.I. 2001) (per curium). "In general the

duty to defend an insured in this jurisdiction s determined by applying the 'pleadings test." Under the "four corners of the complaint" test, it is irrelevant as to what knowledge the insurance company may have gained outside of the allegations in the complaint to assert that the claim is in fact not covered. *See e.g. International Business Machines v. Liberty Mut. Fire Ins. Co.*, 303 F. 3rd 419, 426-27 (2nd Cir. 2002).

As stated in the leading case of *Employers' Fire Insurance Co. v. Beals*, 103 R.I. 623, 632, 240 A.2d 397, 402 (1968): "That test requires that the trial court look at the allegations contained in the complaint, and, 'if the pleadings recite facts bringing the injury complained of within the coverage of the insurance policy, the insurer must defend irrespective of the insured's ultimate duty to the plaintiff.'"

For the purpose of this "pleading" determination, plaintiff would argue that letters sent by the defendant to its assured and/or attached as exhibits to its Statement of Undisputed Fact are inapposite, as it is the complaint and the policy which are to be first considered. However, such letters are apposite as to the duty owed to the plaintiff and/or whether it "waived" its claim of no duty to defendant and/or for indemnification, by its failure to provide a seasonable response to the complaint, some five months after notice was sent. (See also Plaintiff Robert Gaulin's (initial) Statement of Facts, page 2, filed for the Rule 16 Conference.)

Plaintiff would assert that there is a duty to defend, there are disputed material facts and, therefore, the defendant's motion for summary judgment ought to be denied and the matter remanded to the Providence Superior Court.

Here, it is clear from the defendant's Statement of Undisputed Fact, that a policy of coverage is in existence. Hence, the defendant, as "the insurer (now) bears the burden

of proving the applicability of policy exclusions and limitations in order to avoid an adverse judgment." *General Accident Insurance Company of America v. American National Fireproofing, Inc.*. 716 A.2d 751, 757 (R.I. 1998) (citing 19 Couch on Insurance § 79:315 (Ronald A. Anderson, 2d ed. 1981)).

To meet this shifted burden, the defendant must prove that the policy's terms are not ambiguous or capable of more than one reasonable meaning. For, "if, however, a policy's terms are ambiguous or capable of more than one reasonable meaning, the policy will be strictly construed in favor of the insured against the insurer." *Sjogren v. Metropolitan Property & Casualty Insurance Co.*, 703 A.2d 608, 610 (R.I. 1997) and *Town of Cumberland v. R.I. Interlock Risk Management Trust Inc.*, 860 A.2d 1210, 1204 (R.I. 2004).

Consequently, "[w]hen ambiguity is present and the document's language is susceptible to more than one reasonable interpretation, the language will be strictly construed with all ambiguities decided against the drafter." *Employers Mutual Casualty Co. v. Pires*, 723 A.2d 295, 198 (1999) and *Monahan v. Girouard*, 911 A.2d 666 (R.I. 2006).

As set forth in Exhibit 6 to the Defendant's Statement of Undisputed Fact, the subject policy provides "Commercial General Liability Coverage" for "all of the premises you Own, Rent or Occupy Loc 1) 1598 Lonsdale Avenue" (the subject property) along with two other properties, one located at 12-14 Blackstone Street, Cumberland, R.I. and the other located at 29 Warner Street, Prudence Island, providing for a personal and advertising injury of up to $300,000. While the insured's mailing address was in East Providence, the policy does not otherwise mention the insured's East Providence address.

That portion of Exhibit 6 which reads COMMERCIAL GENERAL LIABILITY FORM SECTION 1-COVERAGES COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY provides:

1. Insuring Agreement

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . .

In addition, the defendant claims a policy exclusion from the general liability coverage.

Here, the claimed policy exclusion reads:

* * * it is hereby understood and agreed that this policy will not provide coverage . . . arising out of:

> "Bodily Injury" . . . caused by . . . with:
>
> > The existence of lead, removal of lead testing . . .or exposure . . . (at or near) the insured premises; or, at any location at which the insured is working or has worked in connection with such existence, removal or testing.. . . in connection with such existence, removal or testing:
> >
> > 1)Whether or not caused by at the instigation of, or with the . . . involvement of the insured, the insured's employees or other persons on the insured's premises or work site; or
> >
> > 2) Whether or not caused by or arising out of the insured's failure to properly supervise or keep the work site in a safe condition.

2. Insurance Contract is Ambiguous and Capable of More than One Interpretation:

Plaintiff contends that such claimed lead policy exclusion is ambiguous and capable of more than one reasonable interpretation, especially when read in conjunction with the policy asbestos exclusion. That asbestos exclusion read provides:

* * * this policy will not provide coverage . . . arising out of:

(A) Asbestos or any asbestos related bodily injury . . . or

(B) Any alleged act, error, omission or duty involving asbestos, its use, exposure, presence, existence, detection, removal, elimination, transportation, disposal or avoidance; or

( C) The use, exposure, presence, existence, detection, removal, elimination, or avoidance of asbestos in any environment, building or structure.

(a) Lead Policy Exclusion by Itself

As to the lead exclusion rider itself, the rider language refers to the "existence of lead, . . . lead testing . . or exposure . . .. (at) the insured premises; or, at any location at which the insured <u>is working or has worked in connection with such existence, removal or testing</u>. There is no reference to any rental premises or to any injury to any tenant or third-party of the tenant. Nor is there a specific any lead related injury exclusion. Hence, a reasonable interpretation of this clause involves a situation where the insured is involved with the testing or removal of lead on the insured's premises or at his/her worksite.

Additionally, neither of the two modifier or qualifier sections 1) and 2) to this clause, adds any clarity. These two sections each appear to restrict the coverage to involvement by the insured caused by his/ her instigation or involvement <u>or</u> that of his/her workers as to working on the premises, in general, or at a worksite on the premises, in particular, <u>or</u> for failure on the part of the insured <u>to properly supervise or keep the work site in a safe condition</u>. Instigation is defined in Webster's Dictionary as "to goad or urge forward; provoke." And, involvement is defined in Webster's as "to encumber," "to engage as a participant," " to oblige to take part." Thus, section 1 to this clause speaks to exclusion in the alternative, to that an active part on the part of the insurer, which would involve the

preceding testing or removal of lead from the worksite or working place of the subject premises; and if no action on the insurer's part, then for any action on the part of his/ her workers at the worksite or by any other persons on the worksite.

Nothing is mentioned or even hinted about excluding any claim by any tenant or guest on any of the three covered premises, for any pre-existing lead condition or the like.

Here, the manifest expectation of the parties is that coverage is afforded for any injury to the tenants or residents of the rented premises or any visitors lawfully on the premises. And, it would appear that if the insurer or any workers under his/her direction or other persons become involved in the testing, examination or removal of lead then, in that event, the policy exclusion is triggered–but not otherwise.

(b) In comparison with the Asbestos Exclusion

A comparison of the lead exclusion with that of asbestos exclusion confirms that lead exclusion is indeed ambiguous and susceptible of more than one reasonable reading.

The Asbestos Exclusion, which also is part of said Exhibit 6, reads:

* * * this policy will not provide coverage . . . arising out of:

(A) Asbestos or any asbestos related bodily injury . . . or

(B) Any alleged act, error, omission or duty involving asbestos, its use, exposure, presence, existence, detection, removal, elimination, transportation, disposal or avoidance; or

( C) The use, exposure, presence, existence, detection, removal, elimination, or avoidance of asbestos in any environment, building or structure.

When reading the policy and all of the endorsements or riders together, which become part of the contract, and are to be read together with the entire policy, *Children's Friend & Serv. v. St. Paul Ins.*, 893 A. 2d 222, 231 (R.I. 2006), it is clear that where this defendant <u>sought to exclude any coverage</u> for a pollutant or intoxicant, such as asbestos,

the rider's language is clear and unambiguous. However, the same cannot be said for the exclusion of coverage for a pollutant or intoxicant, such as lead, which is not clear and unambiguous.

Thus, in examining the two policy exclusions of lead and asbestos under the lens of being part of the entire contract, it is clear that the defendant did not intend or write its lead exclusion to exclude all claims for lead injury–only those relating to examination, testing and/or removal of lead from the premises by the insured or any workers or other persons directed by the insured.

Therefore, there being an ambiguity and the terms of the "insurance contract being subject to one or more reasonable interpretations, the policy ought to be read in favor of the insured to avoid forfeiture." *Campbell v. Norfolk & Dedham Mutual Fire Insurance Co*., 682 A.2d 933, 935 (R.I. 1996).

3. Pleading Test:

Moreover, in examining the four corners of the subject complaint, there is nothing to show any testing, examination or removal by the plaintiff or any worker or other party acting for or in his behalf at any worksite or area of the covered premises.

The case of *Progressive Casualty Ins. Co. v. Narragansett Auto Sales*, 764A. 2d 722 (R.I. 2001) is instructive in pleading test determination of a duty to defendant and coverage.

In *Narragansett Auto*, the defendant dealership sought liability coverage for automobiles bearing any one of the fifteen Rhode Island dealer plates that were issued to the defendant dealership. Another independent and unrelated auto-repair facility, used one of the defendant's dealer plates to use on an unregistered car owned by a third-party–who

had no connection to defendant's business and who was not authorized by anyone to use that dealer plate.

That unauthorized third-party was involved with an auto accident and suit was filed against the defendant dealer, based on the use of the unauthorized dealer plate.

In looking at the four corners of the pleading, and the policy, the trial judge concluded that there was no coverage, because the tort-feasor did not have permission to use those dealer plates, and, furthermore, in granting summary judgment, the trial judge also concluded that "ultimately, Progressive would not be responsible" under its policy.

The Rhode Island Supreme Court reversed the trial judge's grant of summary judgment to the insurance carrier and held, "under the pleadings test, 'the insurer must defend *irrespective of the insured's ultimate liability to the plaintiff.*" Id. at 725.

Here, there is nothing in the Complaint that shows any testing, examination or removal of any lead by the insured directly or indirectly or by any worker or anyone else on behalf of the insured, which cased any bodily injury or by any failure to supervise in such testing, examination or removal, the defendant has a duty to defend and the matter ought to be remanded to the superior court, so that the defense of the underlying lawsuit may be carried on.

4. Waiver of Policy Exclusion:

An insurance carrier owes a duty of good faith to its assured. In this regard, it cannot sit back and let the time for response to a suit elapse and then deny coverage. In those situations where there is a coverage issue and the insurance company is put on notice it has an duty to take immediate steps to advise that there is no coverage and no duty to defend or, in the alternative, file a "reservation of rights."

Here, the defendant was put on notice, soon after suit was initiated and served. It sat back and did nothing and let the 20 day response time expire. Indeed, as stated in the Plaintiff's Statement of Facts for the Rule 16 Conference, the defendant took no action to deny coverage or deny a defense until five months after suit was served on plaintiff, when it "dropped-off" a denial by UPS., which was not received by the plaintiff, knowing some five months earlier that plaintiff had only 20 days to respond to the suit. Under these conditions, defendant ought to be estopped from denying coverage, as it could have easily answered the case under a reservation of rights or filed for declaratory judgment. But to sit back and do nothing for its policy holder, for such a long period of time should be against public policy and ought to be considered a breach of its duty the policy, thereby denying it the right at the late stage to now claim no duty to defend and no coverage. *See e.g. Signature Dev. Cos. v. Royal Insurance Co.*, 230 F.3rd 1215 (10th Cir. 2000); *Specialty Nat. Ins. Co. v. OneBeacon Ins. Co.*, 486 F.3rd 727 (1st Cir. 2007); and *St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 919 F.2d 235 (4th Cir. 1990).

5. Punitive Damages:

Punitive damages, as allowed under Rhode Island law, intentionally dealt with intentional torts. Prior to the landlord tenant statutes on habitability, as may be applicable in the instant case, where no overt action is required, punitive damages were not recognized or applicable. The allowance of punitive damages in the instant premises for non-action, runs counter to prior law and is not the type of damages intended to be ordinarily excluded by insurance contract law.

III CONCLUSION

For the foregoing reasons and such additional reasons as may be put forth at argument, plaintiff would move that defendant's Motion for Summary Judgment be Denied; that the defendant be held to provide and pay for a defense to the underlying action to plaintiff and, in addition, pay counsel fees, incurred by the plaintiff to the present in seeking relief in this matter; and that the matter be remanded to the originating court for such other relief as the circumstances deem mete.

DATED: At Cumberland, Rhode Island this 31st day of October, 2007.

/s/ *Edward John Mulligan*

*Edward John Mulligan*, # 0143
2176 Mendon Road, Bld D, Suite 3000
Cumberland, R.I. 02864
Tel (401) 335-3353
Fax (401) 335-3350
e-mail: ejmull @ cox. net
Attorney for plaintiff, Robert Gaulin

CERTIFICATION OF SERVICE

I hereby certify that an exact copy of the within document was electronically mailed to Electronic Case Filing System of the United States District Court for distribution to all counsel of record this 31st day of October , 2007

/s/ *Edward John Mulligan*

*Edward John Mulligan*, # 0143