UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROBERT GAULIN,<br>Plaintiff,<br><br>v.<br><br>PENN-AMERICA INSURANCE GROUP, INC.,<br>Defendant. | ) | DOCKET NO: 07-0165 ML |

**PENN-AMERICA INSURANCE GROUP, INC. (mis-identified)**
**REPLY MEMORANDUM TO PLAINTIFF'S SUMMARY JUDGMENT OPPOSITION and PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Now comes the defendant Penn-America Insurance Group, Inc., in the above-entitled declaratory judgment action and submits this Reply Memorandum pursuant to Local Rule 7(b)(2). Pursuant to that Rule, Penn-America responds briefly and specifically to the issues that plaintiff has raised.

**I. Plaintiff's Assertion as to "No letter and No Agent and Delay in Response" (Plaintiff's Memorandum, pages 1-2).**

There was no delay in Penn-America's denial of coverage. Penn-America learned of the Beausoleil's lead poisoning claim in 2005, and promptly notified Gaulin that there was no coverage for defense and/or indemnification under the subject Penn-America policies. Exhibit 3 (Document #8-5, coverage denial letter dated 2-23-05). That coverage denial was sent via certified mail and regular mail, and Gaulin signed for the same on February 25, 2005. (Exhibit 3). As of February 25, 2005, Gaulin knew that there was no coverage for the Beausoleil's claims. When the Beausoleil suit papers were faxed to Penn-America in 2007, Penn-America again denied coverage in a letter sent to Gaulin via UPS Ground and regular mail. The UPS ground tracking information shows that this February 26, 2007, coverage denial letter was delivered to Gaulin on March 1, 2007. Exhibit 5



644168v1

(Document #8-7, coverage denial letter dated 2-26-07) Additionally, the denial letter was sent to Gaulin via regular mail and was not returned to Penn-America.

As to any assertions in this section of plaintiff's memorandum regarding the insurance agent and the asbestos policy exclusion, those items are simply not relevant. There is no need for the court to look to the asbestos exclusion when this is a lead contamination claim, and there is an explicit exclusion titled, in all capital letters, "LEAD CONTAMINATION EXCLUSION."

## II. In attempting to establish ambiguity, the plaintiff takes the insurance policy terms out of context, and misreads the exclusion. (Plaintiff's Memorandum, pages 6-10).

An insurance policy "is not to be described as ambiguous because a word is viewed in isolation or a phrase is taken out of context." Providence Journal v. Travelers, 938 F. Supp. 1066, 1073 (Dist. Ct. R.I. 1996) (citing McGowan v. Connecticut Gen. Life Ins. Co., 289 A.2d 428, 429 (R.I. 1972)). As this Court (Lisi, J.) has previously observed:

> "Because ambiguity lurks in every word, sentence, and paragraph in the eyes of a skilled advocate . . . the question is not whether there is an ambiguity in the metaphysical sense, but whether the language has only one reasonable meaning when construed, *not in a hypertechnical fashion, but in an ordinary, common sense manner.*" Garden City Treatment Center, Inc. v. Coordinated Health Partners, Inc., 852 A.2d 535, 542 (R.I. 2004)(citing Textron, Inc. v. Aetna Cas. and Sur. Co., 638 A.2d 537, 541 (R.I. 1994)). Any word will produce multiple dictionary definitions; the test is not whether there exist alternate meanings but whether there exist *reasonable* alternate meanings. W.P. Assocs. v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994). . . . In Rhode Island, a court is bound to look at the whole document in its entirety and give its language its plain, ordinary and usual meaning. Garden City Treatment Center, Inc. v. Coordinated Health Partners, Inc., 852 A.2d 535 (R.I. 2004).

RGP Dental, Inc. v. Charter Oak Fire Ins. Co., 2005 U.S. Dist. Lexis 28199 (Lisi, J.) (emphasis in original).

**A. Plaintiff's references to "work."**

The plaintiff asserts that the Lead Contamination Exclusion is ambiguous because its subparts allegedly reference work. The exclusion must be read as a whole, and when read in that manner, clearly and unambiguously states that there is no coverage for bodily injury or any other damages caused by, arising out of or in any way connected with the existence of lead or exposure to lead in any form which is or has been at any time been present in, on, or near the insured's premises. Exhibit 7 (Document #8-9, Lead Contamination Exclusion). The referenced subparts that the plaintiff cites simply broaden the exclusion, as they start out with the terms "whether or not caused by . . ." Also, by its plain terms, the exclusion is not tied in any way to "work" or work-related exposure. When read as a whole, the exclusion is clear and unambiguous.

**B. Asbestos exclusion has no relevance.**

The plaintiff cites to the asbestos exclusion as being an example of a clear and unambiguous exclusion. The asbestos exclusion is not relevant. The defendant does not rely on that exclusion, and this case does not involve any asbestos allegations. The claim at issue involves a lead poisoning claim, and the subject policies contain an explicit Lead Contamination Exclusion. Further, it makes no sense that Gaulin would look to the exclusion titled "Asbestos Exclusion" and rely on the same to determine whether there is coverage for allegations of lead exposure, especially where there is a separate exclusion titled "Lead Contamination Exclusion."

**III. There was no waiver by Penn-America.**

Penn-America sent coverage denial letters to Gaulin on February 23, 2005, and February 26, 2007. Gaulin signed for the first coverage denial letter, and the UPS ground tracking order for the second letter states that it was left at Gaulin's premises. Additionally, both letters were sent via regular mail, and neither were returned. Gaulin was well aware even before the underlying suit was filed in 2006 that his Penn-America policies did not provide coverage for the Beausoleil's claims.

Contrary to Gaulin's assertions, Penn-America did not put him in "jeopardy and at civil risk" when it timely and properly denied coverage.[1]

Wherefore, Penn-America requests that this court grant Penn-America's motion for summary judgment.

PENN-AMERICA INSURANCE
GROUP, INC. *(mis-identified),*
By its attorneys,
MORRISON MAHONEY LLP,

/ s/ Paul Sullivan

Paul V. Sullivan (#5712)
121 South Main Street, Suite 600
Providence, RI 02903
Tel: (401) 331-4660; Fax: (401) 351-4420
pvsullivan@morrisonmahoney.com

**CERTIFICATE OF SERVICE**

I hereby certify that an exact copy of the within document was electronically mailed to the Electronic Case Filing system of the United States District Court for its distribution to all counsel of record, this of 5th day of November, 2007.

/ s / Paul Sullivan

Paul V. Sullivan

[1] The docket sheet (Exhibit 10) from the underlying Beausoleil claim indicates that an answer was filed, and no default ever sought. Further, though not dispositive on the issue, the Providence Superior Court classifies this matter as a lead paint case, as the docket sheet identifies the Beausoleil case as "Case Type: Lead Cases."