UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROBERT GAULIN | : | |
| | : | |
| v. | : | C.A. No. 07-165ML |
| | : | |
| PENN-AMERICA GROUP, INC. | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before the Court are cross motions for summary judgment filed by Plaintiff Robert Gaulin ("Gaulin" or "Plaintiff") and Defendant Penn-America Insurance Group, Inc. ("Penn-America"), pursuant to Fed. R. Civ. P. 56. This is a declaratory judgment action brought by Gaulin, the insured, against his insurer, Penn-America, seeking coverage (defense and indemnity) for a lead paint action brought against Gaulin by former tenants. Penn-America moves for summary judgment in its favor claiming the lack of both a duty to defend and indemnify under the applicable insurance policies. Gaulin cross-moves for summary judgment in his favor on the duty to defend and argues that resolution of the indemnity issue should be "suspended"until resolution of the underlying state court litigation. A hearing was held on November 27, 2007. For the reasons stated below, I recommend that Penn-America's Motion for Summary Judgment (Document No. 8) be GRANTED and Gaulin's Cross-motion (Document No. 13) be DENIED.

**Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a

verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Nat'l Amusements, 43 F.3d at 735. Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

Cross-motions for summary judgment "simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (internal quotation marks and citation omitted). The legal standard for summary judgment is not changed when parties file cross-motions for summary judgment. Adria Int'l Group, Inc. v. Ferre Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002) (internal quotation marks and citation omitted).

**Facts**[1]

During the period relevant to this dispute, Gaulin owned a residential property located on Lonsdale Avenue in Lincoln. Gaulin rented the property to the Beausoleil family who assumed residency in approximately March 2001. Gaulin was insured for this property under two commercial general

---

[1] These facts are gleaned from the parties' LR Cv 56 fact statements and supporting documents.

liability policies – # PAC 6264469 for the period August 4, 2001 to August 4, 2002 and # PAC 6164376 for the period August 4, 2000 to August 4, 2001. These policies were identical and each contained exclusions for lead contamination and punitive damages.

On or about January 21, 2005, the Beausoleils' attorney sent a demand letter to Gaulin's insurance agent. The letter alleged that the Beausoleils' minor son (age two at the time) was lead poisoned and that an October 2, 2001 lead inspection of the premises found damaged and chipping lead paint. The letter also advised that "notices of violation relating to the existence of the lead paint were sent to [Gaulin's] attention in October 2001 and February 2002." By certified letter dated February 23, 2005, Penn-America informed Gaulin that it had been presented with the Beausoleil claim and advised that it was denying coverage (both defense and indemnification) based on the lead contamination exclusion contained in the applicable insurance policies.

The policies in question each contain an endorsement page titled "LEAD CONTAMINATION EXCLUSION." The exclusion advises that it is "understood and agreed that this policy will not provide coverage, meaning indemnification or defense costs arising out of:

> "Bodily Injury", "Property Damage", Personal Injury, Advertising Injury, Medical Payments or any other damages because of liability, alleged liability, or occurrence resulting from, caused by, arising out of or in any way connected with:
>
> The existence of lead, the removal of lead, the testing for lead, or exposure to lead in any form which is or has at any time been present in, on, or near: the insured's premises; or, at any location at which the insured is working or has worked in connection with such existence, removal or testing:
>
> 1) Whether or not caused by, at the instigation of, or with the direct or indirect involvement of the insured, the insured's employees or other persons on the insured's premises or work site; or,
>
> 2) Whether or not caused by or arising out of the insured's failure to properly supervise or keep the work site in a safe condition."

The policies also each have a separate "PUNITIVE DAMAGES EXCLUSION" which provides that Penn-America "shall not be liable for any damages awarded against an insured as punitive or exemplary damages."

On or about August 18, 2006, the Beausoleils filed suit against Gaulin in Superior Court, individually and as the parents of their minor son. Beausoleil v. Gaulin, C.A. No. PSC 06-4333. The Superior Court docket identifies the "case type" of this suit as a lead case. The Beausoleil's Complaint alleges three counts – Count I Negligence; Count II Negligent Misrepresentation and Omissions; and Count III Punitive Damages. In Counts I and II, the Beausoleils allege that Gaulin breached various common law and statutory[2] duties owed to them and their minor son as tenants. As a result of such breaches, the Beausoleils allege that their minor son was "lead poisoned" and has consequently "suffered and will continue to suffer severe and permanent injuries; incurred and will continue to incur medical and health expenses; suffered and will continue to suffer severe emotional distress; and was otherwise damaged." The Beausoleils allege that they have also suffered emotional distress and have incurred medical and health expenses as well as loss of society of their child.

Gaulin's attorney faxed the Beausoleils' Complaint to Penn-America on January 23, 2007 and demanded that Penn-America "file an answer forthwith." The fax cover sheet from Gaulin's attorney identified the claim type as "lead paint injury at 1598 Lonsdale Ave., Lincoln, RI." By letter dated February 26, 2007, Penn-America reiterated its denial of coverage (both defense and indemnification) based on the applicable policies' lead contamination and punitive damages exclusions. Gaulin's attorney answered the Beausoleil's Complaint on March 27, 2007.

**Discussion**

---

[2] The Beausoleils' Complaint references certain state statutory duties in reference to its negligence claims. However, the Complaint does not allege any statutory claims against Gaulin or seek any statutory damages.

**A. Duty to Defend**

"Under Rhode Island law, an insurer's duty to defend its insured is broader than its duty to indemnify." Employers Mut. Cas. Co. v. PIC Contractors, Inc., 24 F. Supp. 2d 212, 215 (D.R.I. 19998). Rhode Island applies the "pleadings test" in determining a duty to defend. Progressive Cas. Ins. Co. v. Narragansett Auto Sales, 764 A.2d 722, 724 (R.I. 2001). "Under the pleadings test, the insurer's duty to defend is ascertained by laying the complaint alongside the policy; if the allegations in the complaint fall within the risk insured against in the policy, the insurer is said to be duty-bound to provide a defense for the insured.'" Emhart Indus., Inc. v. Home Ins. Co., C.A. No. 02-53S, 2007 WL 2782989 at *6 (D.R.I. Sept. 26, 2007) (quoting Employers' Fire Ins. Co. v. Beals, 240 A.2d 397, 402 (R.I. 1968)). "[I]n other words, when a complaint contains a statement of facts which bring the case within or potentially within the risk coverage of the policy, the insurer has an unequivocal duty to defend." Id. quoting Beals, 240 A.2d at 403. Further, "a reasonableness requirement is implicit in the pleadings test" in order to defeat attempts to "'plead to coverage' by characterizing a claim as something other than what is described in the complaint's factual allegations." Narragansett Jewelry Co., Inc. v. St. Paul Fire and Marine Ins. Co., C.A. No. 05-225T, 2007 WL 4153660 at *4 (D.R.I. Nov. 26, 2007). See also Peerless Ins. Co. v. Viegas, 667 A.2d 785, 789 (R.I. 1995) ("A plaintiff, by describing his or her cat to be a dog, cannot simply by that descriptive designation cause the cat to bark."). Finally, "[a]ny doubts as to whether the complaint alleges an event covered under the policy must be resolved in favor of the insured." Narragansett Jewelry, supra, at *3.

The application of the "pleadings test" requires a determination as to the insurance policy's scope of coverage. Under Rhode Island law, insurance policies are interpreted "according to the same rules of construction governing contracts." Town of Cumberland v. R.I. Interlocal Risk Mgt. Trust, Inc., 860 A.2d 1210, 1215 (R.I. 2004). The Courts "look at the four corners of a policy, viewing it in its entirety,

affording its terms their plain, ordinary and usual meaning." Id. If a policy's terms are ambiguous, it must be "strictly construed in favor of the insured." Id. If a policy's terms are unambiguous, it will be construed and applied as written. Malo v. Aetna Cas. and Sur. Co., 459 A.2d 954, 956 (R.I. 1983). An ambiguity exists when the policy is "reasonably and clearly susceptible to more than one interpretation." W.P. Assocs. v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994). However, "the test is not whether there exist alternate meanings but whether there exist reasonable alternate meanings." RGP Dental, Inc. v. Charter Oak Fire Ins. Co., No. 04-445, 2005 WL 3003063 at *4 (D.R.I. November 8, 2005) (emphasis in original).

The policy exclusions at issue in this case are clear and unambiguous. First, the punitive damages exclusion plainly excludes liability "for any damages awarded against an insured as punitive or exemplary damages." Count III of the Beausoleils' Complaint alleges that Gaulin's "actions and inactions...were willful, wanton, and reckless such that punitive damages should be imposed." Plaintiff does not even attempt to identify an ambiguity in this exclusion. (Document No. 11 at 12). Rather, Plaintiff challenges the merits of the underlying punitive damages claim. Id. He contends that the allowance of punitives for "non-action, runs counter to prior law and is not the type of damages intended to be ordinarily excluded by insurance contract law." Id. Regardless of the legal viability of the Beausoleils' punitive damages claim, the policy unambiguously excludes coverage for awards of punitive damages. Thus, Penn-America has no duty to defend as to this claim.

Second, as to the lead contamination exclusion, I also find that it is clear and unambiguous. It explicitly excludes coverage, "meaning indemnification or defense costs," pertaining to the "existence of lead, the removal of lead, the testing for lead or exposure to lead in any form which is or has at any time been present in, on, or near: the insured's premises...."

Plaintiff's attempts to identify ambiguity are unconvincing. First, Plaintiff contends that an alternative "reasonable interpretation" "involves a situation where the insured is involved with the testing or removal of lead on the insured's premises or at his/her worksite." Document No. 11 at 8. As support, Plaintiff points out that the policy does not refer to rental premises or to any injury to a tenant or lawful visitor "for any pre-existing lead condition or the like." Id. at 9. He then argues the lead contamination exclusion is only triggered "if the insurer [sic] or any workers under his/her direction or other persons become involved in the testing, examination or removal of lead." Id.

Plaintiff's proposed alternate interpretation is neither reasonable nor supported by a plain reading of the exclusion. The exclusion must be read as a whole, and when read in that manner, does not reasonably support Plaintiff's proffered alternate reading. The exclusion plainly excludes coverage for bodily injury and other damages "resulting from, caused by, arising out of or in any way connected with" the existence of lead or exposure to lead in any form which is or has at any time been present in, on or near the insured's premises. Plaintiff's focus on subparts (1) and (2) is misplaced as they cannot reasonably be read to substantially narrow the otherwise broad lead contamination exclusion. See Peerless Ins. Co. v. Gonzalez, 697 A.2d 680, 683 (Conn. 1997) (no requirement that lead exclusion in insurance policy be cast in specific rather than general terms). Rather, they can only reasonably be read as broadening and/or clarifying the exclusion as both subparts begin with the phrase "whether or not caused by," etc.

Second, Plaintiff contends that a comparison of the lead contamination exclusion with the asbestos exclusion "confirm[s] that [the] lead exclusion is indeed ambiguous and susceptible of more than one reasonable meaning." Document No. 11 at 9. In particular, Plaintiff argues that Penn-America did not intend to exclude all claims for lead injury since it did not draft the lead exclusion in the same concise form as the asbestos exclusion. Plaintiff cites no relevant legal support for his position that all

policy exclusions must be drafted in the same style and format.[3] Although the lead contamination exclusion may be wordier than it needs to be, it is not ambiguous.

Having determined that there is no ambiguity, I must now apply the pleadings test. As noted above, the Beausoleils' Complaint is a lead paint case and all of the alleged damages flow from the allegation that the Beausoleils' minor son was "lead poisoned" while a tenant at Gaulin's insured premises. Gaulin argues that the duty to defend is triggered because the Complaint includes certain claims which would be potentially covered by the policies in question. For instance, the Complaint generally alleges that Gaulin failed "to make all repairs and do whatever was necessary to keep the dwelling in a safe and habitable condition," Document No. 1, Ex. B, ¶ 15h, a common allegation for a slip and fall complaint. While it is true that this single allegation does not necessarily trigger the lead contamination exclusion, the Complaint must be read in its entirety. The only reasonable conclusion is that this is a lead paint case and would not have arisen but for the alleged lead poisoning of the tenants' child. See Zoura v. Acceptance Ins. Co., No. D038225, 2002 WL 31492725 (Cal. App. 4 Dist. Nov. 8, 2002) (insurer's denial of defense and indemnification based on "lead contamination exclusion" upheld where lead contamination was at the "root" of the underlying damages claim); Mount Vernon Fire Ins. Co. v. Rennie, No. 97 CV 2778 (SJ), 1999 WL 33113 at *2 (E.D.N.Y. Jan. 22, 1999) (insurer's denial of defense and indemnification based on "lead contamination" exclusion upheld where all of the allegations in underlying tenant suit against insured "relate to problems with lead contamination" and would not have arisen "but for the excluded occurrence"); Unionamerica Ins. Co., Ltd. v. Kaufman, No. Civ. A. 7-7185, 1998 WL 151797 at *2 (E.D. Pa. March 31, 1998 (insurer's denial of defense based on "lead contamination exclusion" upheld where claims in underlying tenant suit against insured were

[3] Plaintiff's reliance on Children's Friend & Serv. v. St. Paul Fire and Marine Ins. Co., 893 A.2d 222, 231 (R.I. 2006), is misplaced. That case dealt with the factual issue of whether an exclusion endorsement was attached to a liability policy when issued and thus binding on the insured.

"based exclusively on harm resulting from exposure to lead paint" in apartment); Mount Vernon Fire Ins. Co. v. Jones, No. CV 95 3295 (RJD), 1997 WL 37033 at *3 (E.D.N.Y. Jan. 14, 1997) (insurer's denial of defense and indemnification based on "lead contamination" exclusion upheld where it was found that "'but for' problems with lead paint, the personal injury action would not arise"); and Peerless Ins. Co., 697 A.2d 680 (no duty to defend insured landlord in suit seeking to recover for lead poisoning of tenant's child based on lead exclusion in policy). Since the allegations in the Beausoleils' Complaint fall squarely within a risk excluded from coverage, Penn-America has no duty to defend Gaulin against such Complaint.

**B. Duty to Indemnify**

Penn-America has also moved for summary judgment that it has no duty to indemnify based on the lead contamination and punitive damages exclusions. Gaulin objects but did not cross move for summary judgment on the duty to indemnify. Rather, Gaulin contends "the separate issue of coverage [should] be suspended – to be determined later, after resolution of the lead paint case by the state court action." Document No. 6 at 3. As discussed in Section A above, the exclusions at issue are clear and unambiguous, and Penn-America has no duty to defend Gaulin against the Beausoleils' Complaint seeking compensatory damages for lead poisoning and punitive damages. Since an insurer's duty to defend is broader than its duty to indemnify, it follows that Penn-America also has no duty of indemnification based on application of the lead contamination and punitive damages exclusions.

Penn-America has met both its burden under Rule 56 to establish the absence of any genuine issue of material fact and its burden under Rhode Island law, Emhart, supra at *12, to prove that the exclusions at issue apply. Further, Gaulin has not shown any reason to stay or "suspend" a decision on the duty to indemnify. Gaulin's entitlement to indemnification is not dependent on the resolution of any factual issues presented in the Beausoleil lawsuit. Aetna Cas. & Sur. Co. v. Kelly, 889 F. Supp. 535, 542

(D.R.I. 1995). If Gaulin prevails in the Beausoleil suit, no question of indemnity arises. If the Beausoleils prevail, their Complaint only seeks damages for lead poisoning and punitive damages which are both plainly excluded from coverage under the Penn-America policies at issue. Thus, it is appropriate to resolve the indemnification at this time and in this litigation.

**C. Waiver of Policy Exclusions**

Plaintiff argues that Penn-America's delay in issuing its second denial of coverage estops it from claiming no duty to defend or indemnify. Penn-America issued two coverage denial letters. The first dated February 23, 2005 was issued approximately one month after a demand letter was sent to Gaulin's insurance agent by the Beausoleils' attorney. In that letter, Penn-America advised Gaulin that he had no coverage due to the lead contamination exclusion. Suit was filed by the Beausoleils against Gaulin on August 18, 2006. Gaulin alleges that he was served in September and that it is his "understanding" that the Summons and Complaint was then forwarded to Penn-America by his insurance agent. Gaulin Affidavit, ¶¶ 6 and 7. Gaulin does not articulate the basis for this understanding or any other supporting evidence. However, for purposes of this Motion and as required by Rule 56, I will assume that Penn-America received a copy of the Beausoleils' Summons and Complaint in September 2006.

The Beausoleil suit was not timely answered and, on January 23, 2007, Gaulin's attorney faxed the Summons and Complaint to Penn-America and demanded that it file an answer. Penn-America did not answer and, on February 26, 2007, it issued its second denial of coverage letter. The second denial letter reiterated the 2005 denial based on the lead contamination exclusion. It also relied upon the punitive damages exclusion because the Beausoleils' Complaint included a punitive damages count. According to the Superior Court docket, Gaulin answered the Beausoleils' Complaint on March 27, 2007 and the parties are engaged in pretrial discovery. Default was not entered against Gaulin and there is no indication that entry of default was requested.

Gaulin has shown no basis to impose a waiver on Penn-America. After reviewing the Beausoleils' initial demand letter, Penn-America promptly advised Gaulin in early 2005 that he had no coverage (defense or indemnity) for a lead poisoning claim. Thus, when he was served with the Beausoleils' lead poisoning Complaint in 2006, Gaulin already knew Penn-America's position. With that knowledge, Gaulin acted at his own peril in not timely responding to the Beausoleils' Summons and Complaint. Even if Penn-America had timely notice of the lawsuit and failed to respond in a reasonable and timely fashion, Gaulin has shown no prejudice. Penn-America reiterated its 2005 coverage denial in early 2007 and Gaulin answered prior to the entry of default.

Gaulin cites three Appeals Court decisions in support of his waiver argument but all are distinguishable. See Document No. 11 at p. 12. For instance, in Specialty Nat'l Ins. Co. v. One Beacon Ins. Co., 486 F.3d 727, 737 (1st Cir. 2007), the First Circuit, applying Massachusetts law, held that the failure to show that a delay in disclaiming coverage "worked to the detriment" of the insured "was fatal to its estoppel claim." It also noted that Massachusetts has "steadfastly required insureds to show detrimental reliance when they claim their insurer is estopped to deny its duty to defend or indemnify." Id. (citations omitted).[4] Since Gaulin has shown no detrimental reliance or other prejudice, this case provides no support to his waiver argument.

**Conclusion**

For the foregoing reasons, I recommend that Penn-America's Motion for Summary Judgment (Document No. 8) be GRANTED and Gaulin's Cross-motion (Document No. 13) be DENIED. I also

---

[4] The other two cases cited by Gaulin are also distinguishable. In St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co., 919 F.2d 235 (4th Cir. 1990), the Fourth Circuit held that an insurer who breaches its duty to defend waives its right to challenge coverage; and in Signature Dev. Cos. v. Royal Ins. Co., 230 F.3d 1215, 1222 (10th Cir. 2000), the Tenth Circuit held that an insurer who breaches its duty to defend is not estopped from challenging coverage but must compensate the insured for damages suffered as a result of such breach. Since Penn-America has no duty to defend, these cases are inapposite.

recommend that the Court enter Final Judgment in favor of Penn-America on all claims in Plaintiff's Complaint.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 17, 2007